more formal presentation for Newark City Government officials before the abrupt termination by Clinkscales of existing Investment Committee contracts with HHGS and IHHMIS. Ryan Ford (son of Iowa State Rep. Wayne Ford who assisted in securing an Iowa primary win for President Barack Obama), Director of the Cashmere Agency was then engaged by HHGS President Joshua Fahiym Ratcliffe and Dr. Kawachi Clemons along with the Investment Committee to secure platinum Hip-Hop Artist "Xzibit" for the Pepsi Refresh Everything Xzibit IHHMIS HHGS East Orange New Jersey submission to Clinkscales. Packaged within the Pepsi Refresh Everything proposal was a scholarship for HHGS restaurant manager Chery attending FAMU to study at the IHHMIS. Clinkscales replied to the request stating he had no knowledge of the Pepsi Refresh Everything campaign. As a PepsiCo African-American Advisory board member, Clinkscales stated he would contact PepsiCo to learn about the Pepsi Refresh Everything campaign. In an attempt to secure all relevant HHGS information and videos for the HHGS Pepsi Refresh Everything campaign application submission, FAMU student and HHGS restaurant manager Miriam Chery visited the Pepsi Bottling Group facility at 7777 Northwest 41st Street, Doral, Miami-Florida to request video content held from HHGS by PepsiCo Account Executive Gregory Johnson. PepsiCo Account Executive Gregory Johnson used PepsiCo video equipment to create hours of HHGS content and over 10 videos chronicling Chery, Nelson Morel and her team of youth entrepreneurs building HHGS in the City of Miami Gardens. Chery made several attempts to PepsiCo to secure the videos for the submission of the HHGS Pepsi Refresh Everything project, and

was denied by HHGS Account Executive Gregory Johnson on orders from Clinkscales proxy Jones. All the HHGS video content with youth entrepreneurs Miriam Chery and Nelson Morel filmed by PepsiCo HHGS Account Executive Gregory Johnson were uploaded to Youtube Channel Hip Hop Grub Spot.

38. On November 30th, 2009 Clinkscales informed the Investment Committee that all funding from PepsiCo and Disney would cease. In addition, Clinkscales also stated that all funding related to the IHHMIS initiative would cease as well. Communications arranged between Dr. Kawachi Clemons CEO IHHMIS and potential franchise investors in East Orange, New Jersey were terminated.

39. For approximately one year, Chery was employed as a restaurant manager at the HHGS venture. Chery was also listed in the PepsiCo customer management business system as the account manager for the Pepsi products that were sold in the HHGS Miami Gardens restaurant. It was in this capacity that Chery developed an interest in the franchising industry and entrepreneurship, and contemplated to further her education at FAMU. Upon learning about IHHMIS and its purpose in identifying economic opportunities and development through Hip-Hop coupled with her interest gained from her employment at HHGS, Chery applied for federal student loans in order to attend FAMU. It was brought to Chery's attention that her involvement in HHGS would enable her to obtain federal work study and scholarship funds from IHHMIS in order to attend FAMU. The Investment Committee sent a memorandum to FAMU in order to help Chery obtain such

scholarship, however, the request was denied. Furthermore, as a result of the lack of investment from PepsiCo and Disney owed to Rick Ross (co-owner of the HHGS restaurant which employed Chery), the partnership with the Investment Committee was severed and the HHGS location in the City of Miami-Gardens, was terminated. Chery, an American born Haitian student who has recently lost family members in the Haiti earthquake, has not only lost her ability to receive official support from FAMU, but the abrupt termination of funds has left her with no other source of income as well.

40. On November 30th, 2009, Clinkscales unexpectedly withdraws all support for the Investment Committee candidate Dr. James Moran, HHGS, and IHHMIS without any explanation. Previously on a call with the Investment Committee, Clinkscales outlined his political relationship with the most influential FAMU Board of Trustee member Reverend R. B. Holmes Jr. Clinkscales begins to control Reverend R. B. Holmes Jr., who is the former Chairman of FAMU NAA Presidential Search Committee that selected Dr. James Ammons as the endorsed presidential candidate selection of the FAMU NAA, and current Vice-Presidential candidate and business associate of Reverend Henry J. Lyons, current presidential candidate of the National Baptist Convention USA Inc. Reverend Henry J. Lyons is the former President of the National Baptist Convention USA Inc., representing over 8.5 million members. Reverend Henry J. Lyons served five years in Federal Prison for fraud, extortion, money laundering, conspiracy and tax evasion. After Henry J. Lyons finished his Federal prison sentence, Reverend R. B. Holmes Jr.

used FAMU as a political tool to secure himself as a Vice-Presidential candidate with Reverend Henry J. Lyons as the Presidential candidate in September of 2009 to regain the presidency and vice-presidency of the National Baptist Convention USA Inc. Reverend R. B. Holmes Jr. is currently under media scrutiny for his role in the financial mismanagement of the FAMU Developmental Research School (FAMU DRS). Clinkscales formed an alliance with Reverend R. B. Holmes Jr. to control proxy FAMU President Dr. James Ammons and FAMU Foundation Inc., Executive Director Carla S. Willis, FAMU NAA Executive Board Members Rita Braswell, Tommy Mitchell Sr., Reginald Mitchell Jr., Clinton McGill, and Andrew Lawyer to engineer a January 6th, 2010 politically motivated lawsuit filed in Leon County, Tallahassee, Florida (Case No. 2010-CA 37 Judge John C. Cooper; Second Judicial Circuit Leon County) against FAMUNAA President Major General Dr. Alvin Bryant to remove Dr. James Moran as the new FAMUNAA President successor, along with suppressing over two thousand recent FAMU graduates to vote in the 2010 FAMU NAA Elections, consolidating Clinkscales' full power and control of FAMU Administrators, FAMU Board of Trustees, FAMU Foundation Inc., Board Members and FAMU NAA Executive Board Members.

## CAUSES OF ACTION

### I. Breach of Express Contract/Implied-In-Fact Contract

41. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

42. The Investment Committee has performed each and every obligation required of it in developing and promoting the HHGS venture under the agreement with Defendants. (See Exhibit A, Exhibit B, Exhibit C, Exhibit D, and Exhibit E).

43. Defendants' conduct of withdrawing funds and resources required to proceed with the HHGS venture constitutes breach of contract. (See Exhibit A and Exhibit B).

44. As a result of the defendants' conduct, the Investment Committee has suffered and continues to suffer irreparable economic losses. The Investment Committee's reputation and credibility in the marketplace, the Investment Banking industry and African American community has been irreparably damaged.

## II. <u>Breach of Covenant of Good Faith and Fair Dealing</u>

45. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

46. Defendants' reassurances and promises of providing resources to the HHGS venture and Defendants' subsequent termination of such resources constitute a breach of implied covenant of good faith and fair dealing with every contract.

47. Defendants' commitment to the HHGS venture was intentionally false when made and constitutes a breach of implied covenant of good faith and fair dealing with every contract.

48. As a result of Defendants' conduct, the Investment Committee has suffered and continues to suffer irreparable economic losses.

### III. Detrimental Reliance

49. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

50. Defendants' promises and reassurances to go forward with the HHGS venture were intentionally false when made. (See Exhibit B).

51. The Investment Committee justifiably relied to its detriment on the promises and reassurances made when executing agreements with third parties. (See Exhibit C, Exhibit D, Exhibit F, Exhibit G, and Exhibit H).

52. Based on the defendants' conduct, the Investment Committee is unable to perform its obligation under the executed agreements. (See Exhibit D, Exhibit E, and Exhibit H).

53. As a result of the Defendants' conduct, the Investment Committee has suffered and continues to suffer irreparable emotional and economic losses by being forced to terminate and/or delay its performance of its obligations. The Investment Committee's reputation and credibility in the marketplace, the Investment Banking industry and African American community has been irreparably damaged.

## IV. Detrimental Reliance (Miriam Chery)

54. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

55. Defendants' promises and reassurances to continue providing funds and going forward with the HHGS venture were intentionally false when made. (See Exhibit E and Exhibit H).

56. Defendants' promises and reassurances to go forward with the IHHMIS initiative were intentionally false when made.

57. Chery justifiably relied to her detriment on the promises and assurances made when she applied for FAMU and as such obtaining federal student loans.

58. As a result of the Defendants' conduct, Chery has suffered and continues to suffer irreparable emotional and economic losses by being unable to obtain scholarship funds and to have other means of finance to further her education.

### V. Tortious Interference (Intentional Interference with Another's Performance of His Own Contract)

59. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

60. The Investment Committee justifiably relied on the conduct and statements made by Defendants' in executing several agreements. (See Exhibit C, Exhibit D, Exhibit F, Exhibit G, and Exhibit H).

61. The Defendants' withdrawal of resources and funding for the HHGS venture has caused the Investment Committee to be unable to perform its obligations under the executed agreements. (See Exhibit D, Exhibit E, and Exhibit H).

62. The abruptness of termination of funding and resources did not provide sufficient notice to the Investment Committee and there are no justifiable reasons for Defendants' conduct.

63. Defendants' conduct intentionally and improperly interfered with the performance of the Investment Committee's executed agreements by preventing the Investment Committee from performing the contract.

64. As a result of the Defendants' conduct, the Investment Committee has suffered and continues to suffer irreparable emotional and economic losses. The severance of the executed agreements has caused the credibility and reputation of the Investment Committee to be irreparably damaged.

## VI. Breach of Fiduciary Duty of Loyalty

65. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

66. The Investment Committee contracted defendant Keith Clinkscales to provide advisory services to secure partnerships with Disney and PepsiCo for the HHGS venture capital project. (See Exhibit A).

67. Defendant Clinkscales requested funds from the Investment Committee in various intervals of the HHGS venture capital project life cycle in return for support to HHGS with PepsiCo and Disney resources. (See Exhibit I, Exhibit J, and Exhibit K).

68. Defendant Clinkscales issued a W-9 form to the Investment Committee for additional payments to influence PepsiCo and Disney corporate decision making to support HHGS for his personal enrichment. (See Exhibit I).

69. As a result of Defendant's actions, the Investment Committee resources, opportunities and information was diverted to further his own personal gain and breaches the fiduciary duty of loyalty owed by directors to their shareholders.

70. As a result of Defendants' actions, the Investment Committee suffers and continues to suffer monetary and emotional damages. The Investment Committee's reputation and credibility in the marketplace, the Investment Banking industry, African American community and with Florida A&M University representing an estimated 256,000 alumni has been irreparably damaged.

## VII. Fraudulent Misrepresentation of Commitment to HHGS

71. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

72. Defendant's promises and assurances of the commitment of PepsiCo, ESPN and Disney made to the Investment Committee, Universal Music Group and Warner Music Group platinum Hip Hop artists, National Football League pro-bowl athletes, Vice Mayor of Miami Garden Oscar Braynon II, Vice Mayor of Miami-

Opa Locka Dorothy Johnson, Dr. Kawachi Clemons, and other third party sponsors were intentionally false when made. (See Exhibit E, Exhibit F, Exhibit G, and Exhibit L).

73. Defendant Jones' promises and assurances of PepsiCo commitment to the HHGS venture were intentionally false when made. (See Exhibit M).

74. The Investment Committee justifiably relied to its detriment on the intentional falsehood and misrepresentations.

75. As a result of Defendants' actions, the Investment Committee suffers and continues to suffer monetary and emotional damages. The Investment Committee's reputation and credibility in the marketplace, Investment Banking industry and in the African American community has been irreparably damaged.

## VII. Conversion

76. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

77. Defendants' unlawful conversion of the funds and resources provided by the Investment Committee without the Investment Committee's consent or lawful cause constitutes conversion and a wrongful taking of the Investment Committee's property.

78. As a result of Defendants' actions, the Investment Committee suffers and continues to suffer monetary damages.

## VII. <u>Quantum Meruit</u>

79. Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs.

80. The Investment Committee is entitled to recover from Defendants, on a *quantum meruit* basis the reasonable value for the services provided in efforts to promote and proceed with the HHGS venture.

## **PRAYER FOR RELIEF**

1. WHEREFORE, Plaintiff demands:

    a. That Defendants be required to pay to Plaintiff such damages as Plaintiff has sustained in consequence of Defendants' breach of contract, tortious interference, fraudulent misrepresentation, and conversion, and to account for:

  i. All gains, profits and advantages derived by Defendants by said breach of contract, fraudulent misrepresentation, conversion, and false designation of origin, and

  ii. That Defendants pay to Plaintiff the costs of this action and reasonable attorney's fees to be allowed to the Plaintiff by court.

  iii. That Plaintiff has such other and further relief as just.

BODDIE & ASSOCIATES, P.C.

_____
COREY D. BODDIE
Attorney for Plaintiffs
Attorney ID #: CB 1922

40 Exchange Place
Suite 1800
New York, NY 10005
Office: (212)-480-7652
Fax: (212)-480-6581
Email: corey@boddieassoc.com